53

$Ex\ A\text{-}C$

PAID
2002-BC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

BARRY CARSON,

      Plaintiff,

vs.

J&D IMPLEMENT, INC., an Ohio corporation,
and JEFFREY MITCHELL, Individually,

      Defendants.

File No.: **06 - 11878**

Hon. _____

Judge David M. Lawson

**MAGISTRATE JUDGE
CHARLES E. BINDER**

# FILED

### APR 2 1 2006

U.S. DISTRICT COURT
BAY CITY, MICHIGAN

STEPHENS & MOORE, PLLC
Attorneys for Plaintiff
By: PHOEBE J. MOORE (P56064)
    CHRISTINE H. STEPHENS (P51659)
121 West Grant Street, Ste. #2
Caro, MI 48723
(989) 672-4255
E-Mail:

J. MICHAEL FORDNEY (P13572)
Attorney for Defendants
P.O. Box 6340
Saginaw, Michigan 48608-6340
(989) 791-7060
E-Mail: wabimaqua@aol.com and
     rjcjmod@aol.com

ROBERT D. GOLDSTEIN (P38298)
Attorney for Defendants
8332 Office Park Drive
Grand Blanc, MI 48439
810-695-3700
E-Mail: Rgoldstein@garanlucow.com

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants, J&D

Implement, Inc., an Ohio Corporation and Jeffrey Mitchell, individually, hereby

remove this action from the Tuscola County Circuit Court to the United States District Court for the Eastern District of Michigan ("this Court") on the following grounds:

1.  Plaintiff Barry Carson commenced this litigation against the Defendants, J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually in the Circuit Court for the County of Tuscola, State of Michigan being Tuscola County Circuit Court File No.: 06-23478-CK ("this action"). The record from this Action is attached hereto as Exhibit A.

2.  On March 27, 2006, the Defendants, J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually, received service of the Summons and Complaint in this action. (See Exhibit A).

3.  The Defendants, J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually, have a good faith belief that the amount in controversy exceeds $75,000, exclusive of costs and interest, if all of the Defendants defenses fail and if Plaintiff proves all of his damages as alleged in his complaint. Pursuant to L.R. 81.1(b)(2) the facts supporting this allegation are: (1) Plaintiff claims he is owed $400,000 as a result of ownership of 25 shares of Class B non-voting stock of J&D valued at $16,000/share; (2) Plaintiff claims additional damages for the alleged fraudulent inducement, innocent misrepresentation, and silent fraud.

4.  Plaintiff is a citizen of the State of Arkansas. (Exhibit B - Complaint ¶ 1).

5.  J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually,

2

are citizens of the State of Ohio. J&D Implement, Inc., is organized under the laws of Ohio with its principal place of business in the County of Tuscola, State of Michigan (Exhibit B - Complaint ¶ 2).

6.  Complete diversity of citizenship exists in this action.

7.  Both Defendants consent to the removal of this action.

8.  This Court has diversity jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a)(1) inasmuch as the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, if all of the defenses of J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually, fail and if Plaintiff proves his damages, and is between citizens of different states. Accordingly, this Action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

9.  Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal is being filed with the Tuscola County Circuit Court, and served on all parties who have entered an appearance and/or have been served (Exhibit C - Notice of Filing Notice of Removal).

10. This Notice of Removal is being filed with this Court within 30 days after the Defendants, J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually, were served with the Summons and Complaint in this Action.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1146, J&D Implement, Inc., an Ohio corporation and Jeffrey Mitchell, individually, removes Case No.: 06-23478-CK from the Tuscola County Circuit Court to this Court.

3

FORDNEY, PRINE & COFFEY

Dated: April 11, 2006

By: _____
J. MICHAEL FORDNEY (P13572)
Attorney for Defendants
P.O. Box 6340
Saginaw, Michigan 48608-6340
(989) 791-7060

GARAN LUCOW MILLER, P.C.

Dated: April 11, 2006

By: _____
ROBERT D. GOLDSTEIN (P38298)
Attorney for Defendants
8332 Office Park Drive
Grand Blanc, MI  48439
(810) 695-3700

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of

Removal in the above-entitled matter has been served this day by first-class mail,

postage prepaid, upon the attorneys for all parties to this litigation at the addresses

listed below:

This 21 day of April, 2006.

_____
Jeri A. Modlin

4

**EXHIBIT "A"**

CASE REGISTER OF ACTIONS          04/11/06   PAGE   1
-023478-CK  JUDGE JOSLYN          FILE 03/06/06
              TUSCOLA COUNTY

P 001 CARSON,BARRY,              VS D 001 J&D IMPLEMENT INC,,
        224 RED LEAF RD                   245 COLUMBIA ST
        LAKE VILLAGE AR 71653             CARO MI 48723
        ATY:MOORE,PHOEBE JA
        P-56064       989-672-4255
                                          SERVICE/ANS 03/27/06   ROS

                                 D 002 MITCHELL,JEFFREY,D
                                        1660 US HIGHWAY 42 NE
                                        LONDON OH 43140
                                        SERVICE/ANS 03/27/06   ROS

                    Actions, Judgments, Case Notes
-----------------------------------------------------------------------------
 Num   Date    Judge      Chg/Pty  Event Description/Comments
 ----  -------- ---------- -------  ---------------------------------------------
   1 03/06/06 JOSLYN               SUMMONS AND COMPLAINT              CLK DDG
                                   RECEIPT# 00205409  AMT     $235.00
                                   JURY DEMAND                       CLK
   2 03/27/06            D 001     RETURN OF SERVICE                 CLK SAH
   3                     D 002     RETURN OF SERVICE                 CLK SAH
...............................  END OF SUMMARY  ............................

APR 13 2006

**EXHIBIT "B"**

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA**

**BARRY CARSON,**
                    Plaintiff,

v.

Case No.: 06- 23478 -CK
Hon.: PATRICK JOSLYN

**J&D IMPLEMENT INC.,** an Ohio Corporation,
and **JEFFREY MITCHELL,** individually,
                    Defendants.
_____/

STEPHENS & MOORE, P.L.L.C.
PHOEBE J. MOORE (P56064)
CHRISTINE H. STEPHENS (P51659)
Attorneys for Plaintiff
121 West Grant Street, Ste. #2
Caro, MI 48723
(989) 672-4255
_____/

**TRUE COPY**
**MARGIE WHITE-CORMIER**

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, BARRY CARSON, by and through his attorneys,

Stephens & Moore, PLLC, and for his Complaint states as follows:

## JURISDICATIONAL ALLEGATIONS

1.     Plaintiff is a resident of the State of Arkansas, and a former resident of the

County of Tuscola, State of Michigan.

2.     The Defendant, J&D Implement, Inc., is an Ohio Corporation, with its

principal place of business located in the County of Tuscola, State of Michigan, having

registered as a foreign profit corporation with the State of Michigan, with the Plaintiff

listed as the resident agent, and the registered office address of 245 Columbia Street,

Caro, Michigan 48723.

1

3.      The Defendant, Jeffrey D. Mitchell, is a resident of City of Plain City, State of Ohio.

4.      The transactions or occurrences which are the subject matter of the instant Complaint occurred in the County of Tuscola, State of Michigan.

5.      The damages claimed by the Plaintiff exceed the sum of $25,000.00, and jurisdiction and venue are otherwise appropriate in this Court.

## COMMON ALLEGATIONS

6.      Plaintiff reincorporates paragraphs 1 through 5 as though fully restated and referenced herein.

7.      The Defendant, J&D Implement, Inc., ("J&D"), is a farm implement company in the business of selling and servicing farm machinery and equipment to residents of the States of Ohio and Michigan.

8.      On or about February of 2003, the Defendant, J&D, sought to establish an employment relationship and business ownership relationship with the Plaintiff, Barry Carson.

9.      Specifically, by means of the letter of intent of July 15th, 2003, Mr. Jeffery Mitchell, the Defendant herein, President of J&D Implement, Inc., and sole shareholder at the time, offered to the Plaintiff the purchase of twenty (20%) percent of the stock of J&D Implement, Inc., and an employment position of $125,000.00 per year.   See attached Letter of Intent of July 15th, 2003 attached hereto at EXHIBIT A.

10.     Specifically, Mr. Mitchell intended to transfer twenty (20%) percent of the stock of J&D Implement to Mr. Carson for the sum of $400,000.00.

2

11.     As to the employment, Mr. Mitchell advised Mr. Carson that he intended a bi-weekly salary of $3,075.00 and a commission based bonus on an annual basis, along with a cost of living increase.  See **EXHIBIT A**.

12.     Based on these specific promises made by Mr. Jeffrey Mitchell of J&D, Mr. Carson accepted the position of ownership in the company as well as the position of employment, and began working at J&D immediately thereafter.

13.     On or about February of 2003, the Plaintiff began employment with the Defendant, J&D, as the general manager of the J&D store in Caro, Michigan, for which the Plaintiff was paid in accordance with the Letter of Intent of July 15th, 2003.

14.     On or about December of 2003, several documents were finalized with respect to the transfer of certain shares of J&D to the Plaintiff.

15.     However, the several documents drafted with respect to the transfer of shares of J&D, are entirely contrary to the parties initial agreement of July of 2003.

16.     Prior to the transfer of said shares, the Defendant, Jeffrey D. Mitchell, executed a resolution without a meeting recapitalizing the shares of the company, so as to establish voting shares and non-voting shares.  Specifically, Mr. Mitchell created 1,000 Class A voting common shares, and 500 Class B non-voting shares.  See actions taken in writing without a meeting dated December 26th, 2003, signed by a Mr. Jeffrey Mitchell attached hereto at **EXHIBIT B**.

17.     Thereafter, the parties entered into the Close Corporation Agreement of December 31st, 2003, purportedly transferring 25 Class B shares to Mr. Barry Carson, the Plaintiff herein.  See Close Corporation Agreement of December 31st, 2003 attached hereto at **EXHIBIT C**.

3

18.    The Close Corporation Agreement attached at **EXHIBIT C** specifies that the shareholders shall receive shareholder certificates which will have the restrictions placed thereon.

19.    On or about December of 2003, Mr. Jeffrey D. Mitchell executed the attached stock certificate, which specifically designates that Mr. Barry Carson owns twenty-five (25) share of Class A Voting Shares.  See Stock Certificate #3, without any restrictions or reservations thereon attached hereto at **EXHIBIT D**.

20.    On or about an unknown date, the parties also executed the J&D Implement, Inc., S Corporation and Buy-Sell Agreement.  See said Agreement of unspecified date attached hereto at **EXHIBIT E**.

21.    The S Corporation and Buy-Sell Agreement attached hereto at **EXHIBIT E** specifically states that Mr. Barry Carson is receiving twenty-five (25) shares of Class B stock, entirely contrary to the stock certificate.  Furthermore, the S Corporation Agreement goes on to specifically state that the company has elected and its shareholders have consented to the election for federal and state income tax purposes as an S Corporation.  The document goes on to insure mandatory distributions of company earnings on an annual basis.  See page 2 at **EXHIBIT E**.  The S Corporation and Buy-Sell Agreement further indicates additional restrictions to be placed upon said stock certificates.  See page 5 of **EXHIBIT E**.

22.    Also on or about December 28th, 2003, the parties entered into the attached Subscription Agreement.  See Subscription Agreement of December 28th, 2003 attached hereto at **EXHIBIT F**.  In said Subscription Agreement, the Plaintiff agreed to purchase 25 Class B non-voting shares of J&D for the amount of $16,000.00

4

per share. At the same time, the Defendant Mitchell's 100 shares were re-labeled as 100 Class A voting shares. See EXHIBIT F.

23.    After executing said document, the Plaintiff transferred the sum of $400,000.00 to the Defendant. The Plaintiff borrowed said sum of money from a financial institution, and continues to pay the principal and interest upon said loan today.

24.    Thereafter on December 31, 2004, the Defendant Mitchell transferred 31 more Class A voting shares to himself, but this time, for the price of $13,000 per share. See attached Actions Taken in Writing Without a Meeting dated December 31, 2004 at EXHIBIT G.

25.    From approximately July 2003 through January of 2006, the Plaintiff remained employed as the general manager of J&D Implement in Caro, Michigan.

26.    However, since July of 2003, the Defendants fraudulent inducement has only continued to escalate.

27.    The Defendants fraudulently induced the Plaintiff to enter into the employment and ownership relationship above.

28.    For example, the Defendant, J&D Implement promised the Plaintiff ownership interest in the amount of twenty (20) percent of the stock of J&D Implement.

29.    However, shortly before the transfer of the stock, the Defendant, Jeffrey D. Mitchell recapitalized J&D, thereby giving the Plaintiff minimal interest if any, in alleged non-voting shares. With respect to the employment relationship at the Caro, Michigan store, the Defendant, J&D, promised an annual bonus. This annual bonus was provided in the year 2003 and 2004, but has not been paid for the 2005.

30.    Further, the Defendant promised a cost of living increase, there was not a cost of living increase provided for the year 2004 and 2005.

5

31.     Furthermore, the appropriate annual tax documentation for the Defendant/J&D, was never provided to the Plaintiff/Shareholder.

32.     For example, the losses attributed to the company for the year 2003, were never provided to the Plaintiff.  Further, in the year 2004, the company failed to provide the appropriate disbursement to the Plaintiff.  Further, 2005 dividends and disbursements were never properly allocated to the Plaintiff.

33.     On or about November of 2005, the parties entered into negotiations to transfer Plaintiff's shares back to the Defendant, Jeffrey D. Mitchell.

34.     During said negotiations, the Plaintiff agreed to train his replacement at the Caro, Michigan store, and completed such period of transition on or about January 27th, 2006, at which time he left his position of employment with the Defendant, J&D.

35.     However, the Defendant has failed to and refuses to finalize said transaction.

## COUNT I
## FRAUDULENT INDUCEMENT/INNOCENT MISREPRESENTATION/SILENT FRAUD

36.     Plaintiff reincorporates paragraphs 1 through 35 as though fully restated and referenced herein.

37.     On or about July 13th, 2003, the Defendant/s made a representation of a material fact, that being that the Plaintiff would receive twenty (20) percent of the stock of J&D Implement, and receive a bonus and cost of living increase for his employment position.

38.     The representation was false when it was made.

39.     The Defendant/s knew it was false when it was made or made it recklessly, without knowledge of its truth.

6

40.    The Defendant/s made the representation with the intention of inducing the Plaintiff's reliance.  In short, the Defendant was purchasing a new store in Caro, Michigan, and needed the Plaintiff to agree to become employed at J&D Implement and move to the State of Michigan.  Thus, the representations were specifically made to induce the Plaintiff's reliance.

41.    The Plaintiff acted in reliance upon these statements by taking a position of employment at J&D Implement in Caro, Michigan, purchasing the shares, and otherwise, moving to the State to Michigan.

42.    The Plaintiff was damaged as a result as he failed to receive any of the full promises made by the Defendant/s, and has been otherwise substantially damaged.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Defendant/s and award the following damages:

    (A)    Compensatory damages in an amount that is in excess of $25,000.00 and that is sufficient to compensate the Plaintiff for his actual, consequential, and incidental losses sustained as a result of Defendant/s wrongful actions;

    (B)    Exemplary damages in an amount in excess of $25,000.00 resulting from Defendant/s intentional and malicious actions; and

    (C)    Interest, costs, and reasonable attorneys fees as allowed by Michigan Law.

## COUNT II
## PROMISORY ESTOPPEL

43.    Plaintiff reincorporates paragraphs 1 through 42 as though fully restated and referenced herein.

44.    On or about July 17th, 2003, the Defendant/s exclusively promised Plaintiff that if Plaintiff would manage Defendant/s business located in Tuscola County,

7

Michigan, Defendant/s would transfer twenty (20) percent of the ownership of the company to the Plaintiff.

45.     Defendant/s promise was clear, definite, and equivocal, and was specifically made to induce Plaintiff to render the contemplated services for the Defendant/s benefit.

46.     In reliance on the promise, to his substantial detriment, Plaintiff performed all that was expected in managing Defendant/s business, and also paid the sum of $400,000.00 for an alleged twenty (20) percent ownership interest in the Defendant, J&D.

47.     For a period of approximately two and one-half years, Plaintiff faithfully rendered his management services to the Defendant, but failed to receive the benefit of his bargain.

48.     Specifically, the Plaintiff failed to receive the standard annual bonus for the year 2005, the cost of living increase for each year with the exception of 2003, and appropriate tax documentation for the organization, including without limitation the appropriate disbursements and/or dividends in accordance with the standard course of dealings.

49.     Despite Plaintiff's repeated requests and demands, the Defendant/s refused to transfer to Plaintiff the promised compensation shares, and disbursements.

50.     At the time of making the promise and inducing the action on Plaintiff's part, Defendant could reasonably foresee that his failure to perform pursuant to the promise, caused the damages Plaintiff has suffered.

51.     As direct and proximate result of Defendant/s failure to perform, Plaintiff has suffered damages in excess of $25,000.00.

8

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Defendant/s and award the following damages:

    (A)    Compensatory damages in an amount that is in excess of $25,000.00 and that is sufficient to compensate the Plaintiff for his actual, consequential, and incidental losses sustained as a result of Defendant/s wrongful actions;

    (B)    Exemplary damages in an amount in excess of $25,000.00 resulting from Defendant/s intentional and malicious actions; and

    (C)    Interest, costs, and reasonable attorneys fees as allowed by Michigan Law.

## COUNT III
## STATUTORY ACTION UNDER MCL 450.1489

52.    Plaintiff reincorporates paragraphs 1 through 51 as though fully restated and referenced herein.

53.    Pursuant to MCL 450.1489 (1), "a shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office where the corporation is located to establish that the acts of a director or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder."

54.    All of the above stated action, including without limitation, the Defendant/s fraudulent conduct and inducing the Plaintiff to operate and manage his Caro location, in exchange for ownership in the company, and failing to transfer said ownership, nor compensate the Plaintiff for his extended commitment to the Defendant, as promised by the Defendant/s, at the principal place of business at the Defendant, J&D, qualifies as the specific action designated in MCL 450.1489.

9

55.     Upon information and belief, the shares of J&D Implement, Inc., are not listed on a national securities exchange, or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

56.     As described above, and over the course of the past two and one half years, the Defendant/s has continued to fraudulent induce the Plaintiff. Furthermore, the course of wrongful and fraudulent conduct of the Defendant/s was not permitted by any agreement that the parties entered into.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter Judgment in his favor, and award him any and all of the following relief as specifically articulated in MCL 450.1489, including:

(A)   The dissolution and liquidation of the assets and business of the corporation.

(B)   The cancellation or alternation of a provision contained in the articles of incorporation, an amendment of the articles of incorporation, of the bylaws of the corporation.

(C)   The cancellation, alteration, or injunction against a resolution or other act of the corporation.

(D)   The direction or prohibition or an act of the corporation or of shareholders, directors, officers, or other persons party to the action.

(E)   The purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts.

(F)   An award of damages to the corporation or a shareholder.

Respectfully submitted,
STEPHENS & MOORE, P.L.L.C.,

By: _____

PHOEBE J. MOORE (P58084)
Attorneys for Plaintiff
121 West Grant Street, Ste. #2
Caro, MI 48723
(989) 672-4255

Dated: March 6, 2006

10

# EXHIBIT A

 

July 15, 2003

Letter of Intent

Barry Carson
2191 North Graf Rd.
Caro, MI 48723

Dear Barry,

After our discussions over the past 6 months, this letter is to confirm that we have come to terms and outline the agreement.

The agreement is for you to purchase 20% of the stock of J&D Implement Incorporated and to be the General manger of the business. Currently there are 1500 shares of which I agree to sell you 300 for a total of $400,000.00. This will include all of the assets of the corporation, but does not include any real estate which is owned by an outside owner. Currently all 1500 shares are owned by myself and I am the Sole Officer and Director and have total rights to sell all or none of the assets of the corporation. At the time of closing the shares will be transferred to you.

Your employment agreement is structured in a way that you will receive a bi-weekly salary ($3075.00) and a commission based bonus that could total $45000 annually that will be paid at the end of the calendar year. The total compensation could total $125,000.00 annually. We would also anticipate an annual cost of living increase on the salary portion of the package based on the economic conditions and your performance in operation the business.

It is my intention to expedite this transaction on our part and try to close no later than August 1st, 2003.

Sincerely,

Jeff Mitchell
President
J&D Implement Inc.

*"Serving You for the Future"*

| 1515 US 22 E | 1680 US 42 NE | 259 W. Main St. | 7550 US 68 N |
|---|---|---|---|
| Wash. C.H., OH 43160 | London, OH 43140 | Ashville, OH 43103 | Wilmington, OH 45177 |
| 740.335.2071 | 614.879.8620 | 740.983.2951 | 937.466.5605 |
| | **HOME OFFICE** | | |

# EXHIBIT B

03/20/2006  10:48   19896724257   STEPHENS MOORE   PAGE  19/46

## ACTIONS TAKEN IN WRITING
## WITHOUT A MEETING
## BY THE SOLE SHAREHOLDER
## AND THE SOLE DIRECTOR
## OF
## J&D IMPLEMENT, INC.

The undersigned, being the sole Shareholder and sole Director of J&D Implement, Inc., an Ohio close corporation (the "Corporation"), does hereby take the following actions by this writing, in lieu of a meeting of the Shareholders and of the Board of Directors, pursuant to the provisions of §1701.54 of the Ohio Revised Code.

### Recapitalization

RESOLVED, that the maximum number of shares of all classes which the Corporation is authorized to have outstanding is one thousand five hundred (1,500) common shares, all without par value: of which one thousand (1000) of said shares shall be known as Class A Voting Common Shares and five hundred (500) of said shares shall be known as Class B Non-Voting Common Shares. The holders of the Class A Voting Common Shares and the Class B Non-Voting Common Shares shall have equal rights provided by Ohio law for shareholders of an Ohio corporation and the Class A Voting Common Shares and the Class B Non-Voting Common Shares shall be identical in all respects, except that the holders of the Class A Voting Common Shares shall be entitled to exercise voting rights, and the holders of Class B Non-Voting Common Shares shall have no voting rights, except where expressly required by Ohio law;

FURTHER RESOLVED, that the forms of share certificates attached hereto and made a part hereof as Exhibits A and B shall be, and they hereby are, adopted, approved, authorized, ratified and confirmed as the definitive forms of certificates evidencing the Class A Voting Common Shares and the Class B Non-Voting Common Shares without par value of the Corporation;

### Amendment to Articles of Incorporation

RESOLVED, that the THIRD Article of the Articles of Incorporation of J&D Implement, Inc. be amended by striking ARTICLE THIRD in its entirety and substituting the following therefor:

THIRD: The maximum number of shares of all classes which the Corporation is authorized to have outstanding is one thousand five hundred (1500) common shares, all without par value: of which one thousand (1000) of

said shares shall be known as Class A Voting Common Shares and five hundred (500) of said shares shall be known as Class B Non-Voting Common Shares.

(a)  No holder of any shares of any class of the corporation shall be entitled to the preemptive rights to subscribe for, purchase, or receive any part of any new or additional shares of any class, whether now or hereafter authorized, or any securities exchangeable for or convertible into such shares, or any warrants or other instruments evidencing rights or options to subscribe for, purchase, or otherwise acquire such shares.

(b)  The holders of the Class A Voting Common Shares and the Class B Non-Voting Common Shares shall have equal rights provided by Ohio law for shareholders of an Ohio corporation and the Class A Voting Common Shares and the Class B Non-Voting Common Shares shall be identical in all respects, except that the holders of the Class A Voting Common Shares shall be entitled to exercise voting rights, and the holders of Class B Non-Voting Common Shares shall have no voting rights, except where expressly required by Ohio law.

RESOLVED FURTHER, that the President of the Corporation be, and he hereby is, authorized and directed to execute and file all documents necessary or incidental to effectuate the foregoing amendment on behalf of the Corporation.

## Share Exchange and Issuance

FURTHER RESOLVED, that the outstanding certificate for one hundred (100) shares of stock of the Corporation shall be cancelled and a new certificate for one hundred (100) Class A Voting Common Shares, subject to the Close Corporation Agreement, be issued to the sole shareholder, JEFFREY D. MITCHELL, in lieu thereof; and that the holder of the presently outstanding share certificate of the Corporation be required within 30 days of this date to surrender and exchange such certificate for shares now held by him for a new certificate for the shares to which he is entitled;

FURTHER RESOLVED, that the President of the Corporation or such other officer shall be, and hereby is, authorized to deliver and perform the transaction contemplated by, the Subscription Agreement by and between the Corporation and BARRY CARSON, a copy of which is attached hereto as Exhibit C and made a part hereof.

FURTHER RESOLVED, that the President and Secretary of the Corporation shall be, and hereby are, authorized in the name and on behalf of the Corporation to execute, issue and deliver to JEFFREY D. MITCHELL and BARRY CARSON

2.

certificates representing the number of fully paid and nonassessable Class A Voting Common Shares or Class B Non-Voting Common Shares to which they shall respectively be entitled.

## Close Corporation Agreement

RESOLVED, that the President of the Corporation or such other officer shall be, and hereby is, authorized in the name and on behalf of the Corporation to execute, deliver and perform the transactions contemplated by the Close Corporation Agreement by and among the Corporation and its shareholders, a copy of which is attached hereto as Exhibit D and made a part hereof.

## Enabling Authority

FURTHER RESOLVED, that, in addition to the specific authorizations hereunder conferred, the officers of the Corporation and each of them shall be, and they hereby are, authorized in the name and on behalf of the Corporation to take all such other and further actions including, but not limited to, the execution, acknowledgment, delivery and filing of all such other and further documents, instruments and agreements as any one or more of them deem necessary, convenient or desirable, in order to effect the actions contemplated by and the purposes of the foregoing resolutions, with the execution, delivery or filing of any such instrument or the taking of any such action as conclusive evidence of the authority of the officer or officers to so act.

IN WITNESS WHEREOF, the undersigned, being the sole Shareholder and the sole Director of the Corporation, has executed these Actions as of the _____26th_____ day of _December_____, 2003.

_____
Jeffrey D. Mitchell

3

# EXHIBIT C

# CLOSE CORPORATION AGREEMENT

This Close Corporation Agreement ("Agreement") is made and entered into as of the 31st day of December, 2003, by and between **J&D IMPLEMENT, INC.**, an Ohio corporation (the "Corporation"), **JEFFREY D. MITCHELL** and **BARRY CARSON** (individually, "Shareholder," and collectively, "Shareholders").

## R E C I T A L S

**WHEREAS**, a Close Corporation Agreement was executed on February 7, 2003, by and between the Corporation and Jeffrey D. Mitchell; and

**WHEREAS**, at the time of the execution of said Close Corporation Agreement, there were one thousand five hundred (1,500) shares of common stock authorized with one hundred (100) common shares of the Corporation outstanding, of which Jeffrey D. Mitchell was the sole shareholder; and

**WHEREAS**, effective as of the date referenced above, the Corporation has been authorized to commence a recapitalization whereby one thousand five hundred (1,500) shares of common shares shall be reclassified: of which one thousand (1,000) of said shares shall be known as Class A Voting Common Shares ("Class A Shares") and five hundred (500) of said shares shall be known as Class B Non-Voting Common Shares ("Class B Shares"); and

**WHEREAS**, as part of such recapitalization, the Corporation shall cancel the one hundred (100) common shares held by Jeffrey D. Mitchell and in exchange issue one hundred (100) Class A Shares, subject to this Agreement; and

**WHEREAS**, as part of such recapitalization, the Corporation is authorized and shall issue twenty-five (25) Class B Shares, subject to this Agreement, to Barry Carson; and

**WHEREAS**, after such recapitalization, the Shareholders shall own all (100%) of the issued and outstanding shares of the Corporation and will be the only shareholders; and

**WHEREAS**, the Shareholders wish to define their power and control and manage the affairs of the Corporation; and

**WHEREAS**, the Shareholders believe that the continued operation of the Corporation as a statutory close corporation will be in the best interest of the Shareholders and the Corporation;

**NOW, THEREFORE**, in consideration of the premises and of their mutual covenants set forth hereinafter, the parties hereto make the following agreement, intending to be legally bound thereby:

1.    INTERPRETATION OF AGREEMENT.

    1.1.    Governing Law.

    This Agreement is to be governed by Section 1701.591 of the Ohio Revised Code, and this Agreement is a close corporation agreement as the term is defined in Section 1701.01(X) of the Ohio Revised Code.

    1.2.    Scope of Agreement.

    This Agreement shall regulate aspects of the internal affairs of the Corporation to the extent set forth herein and, if the articles or regulations of the Corporation shall be inconsistent with this Agreement, such inconsistent provisions of the articles and regulations shall be suspended during the term of this Agreement and the provisions of this Agreement shall be controlling.  To the extent not inconsistent with the provisions of this Agreement, the articles and regulations of the Corporation, as amended from time to time, shall regulate the aspects of the internal affairs of the Corporation.

2.    MANAGEMENT.

    2.1.    Number of Directors.

    The authorized number of directors of the Corporation shall at all times be one (1).  The Shareholders shall vote their shares of the Corporation for any proposal necessary to cause the authorized number of directors of the Corporation to be fixed at one (1).

    2.2.    Election of Directors.

    The Shareholders shall vote their shares of the Corporation so as to cause the board of directors of the Corporation to consist of one (1) person, Jeffrey D. Mitchell.

3.    OFFICERS OF THE CORPORATION.

    3.1.    Officers.

    The sole officer of the Corporation shall consist of Jeffrey D. Mitchell who shall serve as President, Secretary and Treasurer of the Corporation.

    3.2.    Tenure of Office.

    The officer of the Corporation shall hold office at the pleasure of the Director and shall have such duties as set forth herein or in the regulations of the Corporation or as are delegated to him from time to time by the Director of the Corporation.

### 3.3.   Officer's Signatory Power

Jeffrey D. Mitchell, as the sole officer of the Corporation, is hereby authorized to execute, acknowledge or certify in more than one capacity any instrument required to be executed, acknowledged or certified by the holders of two or more offices.

## 4.      AMENDMENT AND TERMINATION.

### 4.1.   Amendment or Termination by Consent.

This Agreement may be amended or terminated by the affirmative vote at a meeting of Shareholders called for such purpose or by written consent of the holders, then parties to this Agreement, of 100% of the outstanding shares of the Corporation and, if more than one class of shares shall be outstanding, by the affirmative vote or written consent of the holders, then parties to this Agreement, of 100% of the outstanding shares of each class.

### 4.2.   Effect of Termination.

In the event of termination pursuant to Section 4.1 of this Agreement, this entire Agreement shall be of no further effect and all aspects of the internal affairs of the Corporation and the relations of the Shareholders among themselves shall be governed by the articles or regulations of the Corporation as then in effect.

## 5.      RESTRICTIONS ON TRANSFERS OF SHARES

### 5.1.   Transfers; Encumbrances.

The Shareholders have entered into an S Corporation and Buy-Sell Agreement ("Buy-Sell Agreement") contemporaneously with the execution of this Agreement. Transfers of Shares shall be governed by the terms of the Buy-Sell Agreement. No Shareholder of the Corporation who is a party to this Agreement shall transfer, sell, gift, pledge, hypothecate, or otherwise encumber any shares of the Corporation except in accordance with the terms of the Buy-Sell Agreement.

## 6.      MISCELLANEOUS.

### 6.1.   Shareholder Certificate Legends.

The Corporation and each Shareholder shall cause each certificate evidencing shares of the Corporation held by each Shareholder to bear an appropriate legend reflecting the terms of this Agreement, which legend may be in the following or any other appropriate form chosen by the Corporation:

> Restrictions on the right to transfer the shares evidenced by this certificate (the "Shares") are set forth in a written Close Corporation Agreement to which the Corporation is a party. The Corporation will mail to the record holder of the

3

Shares a copy of said Close Corporation Agreement, without charge, after receipt of a written request therefor.

**6.2.    Shareholder Meetings.**

The Corporation shall have no annual meeting of shareholders unless a Shareholder, by written notice to the President or Secretary of the Corporation either by personal delivery or by mail within thirty days after the end of the most recent fiscal year of the Corporation, requests that the annual meeting be held, pursuant to §1701.591 (C)(12) of the Ohio Revised Code. Furthermore, if the annual meeting of the shareholders is dispensed with pursuant to the foregoing provision, the annual financial statements required by §1701.38 of the Ohio Revised Code shall be delivered to each Shareholder on or before the last date upon which the annual meeting otherwise could have been held, in accordance with §1701.591(M) of the Ohio Revised Code.

**6.3.    Cure of Breaches.**

If any party to this Agreement shall breach or fail to perform any of its obligations under this Agreement, such party shall, promptly after notice of such breach by any other party hereto, take such action as is reasonably necessary to terminate such breach and to unwind or otherwise cure the effects thereof.

**6.4.    Non-Recognition of Prohibited Acts.**

The Corporation shall not be required to give effect to any act taken by any Shareholder in contravention of this Agreement.

**6.5.    Remedies Cumulative.**

All rights and remedies of each party to this Agreement enumerated herein shall be cumulative and none shall exclude any other right or remedy allowed at law or in equity, and said rights and remedies may be exercised and enforced concurrently. No waiver by any party to this Agreement of any covenant or condition or of the breach of any covenant or condition of this Agreement to be kept or performed by any other party hereto shall constitute a waiver by the waiving party of any subsequent breach of such covenant or condition or authorize the breach or non-observance on any other occasion of the same or any other covenant or condition of this Agreement.

**6.6.    Conformation of Articles and Regulations.**

The Class A Shareholder shall vote his shares of the Corporation for the approval and adoption of such amendments to the articles and regulations of the Corporation as may be necessary or appropriate, if any, in order to carry into effect the provisions of this Agreement.

**6.7.    Counterparts; Captions.**

#-632164 v2

4

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be a duplicate original, but all counterparts taken together shall constitute duplicate originals of one and the same agreement. The captions included in this Agreement are included only for convenience of reference and do not define, limit, explain or modify this Agreement or its interpretation, construction or meaning and are in no way to be construed as a part of this Agreement.

6.8.   Binding Effect.

This Agreement shall inure to the benefit of and be binding upon (a) any person who becomes a Shareholder of the Corporation; (b) any transferee of shares of the Corporation by gift, bequest, or inheritance; and (c) any purchaser or transferee of shares of the Corporation with knowledge or notice of this Agreement, including the respective donees, heirs, next-of-kin, legatees, administrators, executors, successors and assigns (including successive, as well as immediate, successors and assigns) of the parties hereto, each of who (in the case of such successors and assigns of a Shareholder) shall be deemed to be a party to this Agreement.

6.9.   Provisions Separable.

If any provision of this Agreement or the application of any such provision to any person or any circumstances shall be determined to be invalid or unenforceable, then such determination shall not affect any other provisions of this Agreement or the application of such provision to any other person or circumstance, all of which other provisions shall remain in full force and effect; and if any provision of this Agreement is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then such provision shall have the meaning which renders it valid.

6.10.   Entire Agreement.

This Agreement constitutes the entire agreement among the parties hereto in respect of the subject matter of this Agreement, and this Agreement supersedes all prior and contemporaneous agreements effected between the parties hereto in respect of the subject matter of this Agreement.

5

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date set forth hereinabove.

**J&D IMPLEMENT, INC.**

By: _____

Jeffrey D. Mitchell, President

**SHAREHOLDERS**

_____

Jeffrey D. Mitchell

_____

Barry Carson

# EXHIBIT D



ISSUED TO

Barry Carson

DATED

SHARES

For Value Received, _____ hereby sell, assign and transfer unto _____

_____

_____ of the Shares represented by the within Certificate, and do hereby irrevocably constitute and appoint _____ attorney to transfer the said shares on the books of the within named Corporation, with full power of substitution in the premises

Dated _____

In presence of _____

03/20/2006  10:48   19896724257   STEPHENS MOORE   PAGE  32/46

# EXHIBIT E

## J&D IMPLEMENT, INC.
## S CORPORATION AND BUY-SELL AGREEMENT

This is an S Corporation and Buy-Sell Agreement (the "Agreement") entered into effective the ___ day of _____, 2003, by and between J&D IMPLEMENT, INC., an Ohio Corporation (the "Company"), Jeffrey D. Mitchell (the "Class A Shareholder") and Barry Carson (the "Class B Shareholder").

### Background

A.   The Company is authorized to issue (a) one thousand (1000) shares of Class A Voting Common Stock without par value ("Class A Common Stock") of which one hundred (100) shares are presently issued and outstanding; and (b) five hundred (500) shares of Class B Non-Voting Common Stock without par value ("Class B Common Stock") of which twenty-five (25) shares are presently issued and outstanding.   The Company is not authorized to issue any other class of shares.   The Class A Common Stock and the Class B Common Stock (collectively referred to as "Company Shares") are presently owned or subscribed for as follows:

| Shareholders | Class A Common Stock | Class B Common Stock |
|---|---|---|
| Jeffrey D. Mitchell | 100 | 0 |
| Barry Carson | 0 | 25 |

B.   The Company, the Class A Shareholder and the Class B Shareholder wish to enter into this Agreement to prohibit the Class A Shareholder and the Class B Shareholder (collectively the "Shareholders") from encumbering or transferring Company Shares in a manner that would disqualify the Company as an S corporation.

C.   The parties also believe that the best business interests of the Company are served if an orderly method of disposing of the Company Shares is achieved during the lifetime and upon the death of a Shareholder.   Such an orderly arrangement for the Company Shares' disposition precludes, among other things, the possibility of those shares passing to persons whose interests are contrary to the best business interests of the Company.   T he p arties believe that this Agreement will foster a more certain climate for corporate growth and business continuation, and will, at the same time, benefit the Shareholders by providing an available market for the disposition of the Company Shares in the event of a Shareholder's death.

## The Parties Agree As Follows:

## 1. S CORPORATION PROVISIONS

### 1.1 Subchapter S Representation

Each Shareholder acknowledges that the Company has elected and its Shareholders have consented to have the Company treated, for federal and state income tax purposes, as an S corporation. Each Shareholder will provide to the Company, immediately upon the Company's request, such properly signed consents or other documents as, in the opinion of the Company, may be useful or necessary to maintain the Company's status as an S corporation, and each Shareholder covenants that he will do nothing to interfere with the Company's maintaining its status as an S corporation.

### 1.2 Revocation of Election

In the event that the Shareholders determine to terminate the Company's status as an S corporation, and thereafter each Shareholder is provided with written notice of such determination, within thirty (30) days after the delivery of such notice, each Shareholder, if requested, will execute a consent to such revocation in the form prescribed by the Internal Revenue Service and shall deliver such consent to the Secretary of the Company.

### 1.3 Inadvertent Termination of Subchapter S Election

In the event of a termination of the Company's status as an S corporation, if the Company and the Shareholders who remain after such termination desire that the Company's status as an S corporation be continued, the Company and such Shareholders agree to use their best efforts to obtain from the Internal Revenue Service a waiver of the terminating event on the ground of inadvertency. The Company and such Shareholders further agree to take such steps, and make such adjustments, as may be required by the Internal Revenue Service pursuant to Sec. 1362 (f)(3) and (4) of the Internal Revenue Code of 1986, as amended (the "Code"). The Shareholder who caused the terminating event to occur shall bear the expense of procuring the waiver, including the legal, accounting and tax costs of taking such steps, and of making such adjustments as may be required.

### 1.4 Mandatory Distribution of Company Earnings

The Shareholders and the Company agree that the Company shall be obligated to make cash distributions to the Shareholders as provided in this section.

The amount of such required distributions to the Shareholders shall be a percentage of the allocable S Corporation income of the Company as reflected on the Company's federal income tax returns. Such percentage shall be equal to the highest marginal tax affected state and federal income tax rates applicable to any of the Shareholders on their respective allocable share of income from the Company.

2

## 2. LIFETIME RESTRICTIONS AND TRANSFERS

### 2.1 Disposition of Class B Common Stock During Class B Shareholder's Lifetime

(a)  General Restriction.  The Class B Shareholder, during his lifetime, shall not sell, assign, pledge or otherwise transfer or encumber in any manner, or by any means whatsoever (voluntarily or involuntarily, by operation of law or otherwise), all or any part of his Company Shares or his interest therein, except to the Class A Shareholder or pursuant to the provisions set forth in this Agreement, or with the written consent of the Company and the Class A Shareholder.  Notwithstanding any of the provisions contained in this Agreement permitting the transfer of Company Shares, no such transfer shall be permitted if it would jeopardize the tax status of the Company as an S corporation.

(b)  Drag Along-Tag Along Rights.  In the event that the Class A Shareholder, as majority shareholder, desires to sell all, or substantially all, of his Shares in the Company, then the Class A Shareholder will include the Company Shares owned by the Class B Shareholder, as minority shareholder, in such sale, and the Class B Shareholder agrees to sell all of his Shares in the Company upon the same price and terms as the majority Shareholder is selling his Shares.

(c)  Call Right.  The Corporation shall have the right to call for redemption ("Call Right") the Class B Shares held by a Shareholder.  The Call Right shall be exercisable at anytime, including but not limited to the event of a Shareholder's divorce or termination of employment, and such Call Right is exercisable without approval of the Class B Shareholders.  The Corporation shall provide written notice to the Shareholder of its exercise of the Call Right.  Upon delivery of such notice, the Corporation shall purchase from the Shareholder or his or her estate, and such Shareholder or estate shall sell to the Corporation, all Class B Shares owned by the Shareholder or his or her estate for the purchase price and pursuant to the terms set forth in Sections 3.3 and 3.4 hereof (modified, as necessary, to treat the exercise of the Call Right as the triggering event for the purchase, as opposed to the death of a Shareholder).  The Corporation at any time may assign its Call Right to any Shareholder owning Class A Shares.

### 2.2 Non-Recognition of Certain Transfers

The Company shall not recognize, nor be compelled to recognize, any transfer, or issue any certificate representing any stock, to any person who has not delivered to the Company (i) a written undertaking to be bound by the terms and conditions of this Agreement, and (ii) for as long as the Company's status as an S corporation continues, a written consent to the treatment of the Company as an S corporation.  The Company will not recognize, nor be compelled to recognize, any transfer, or issue any certificate representing any stock, to any person the transfer to whom or to which in the opinion of the Company's counsel could disqualify the Company as an S corporation.

3

The Company will not recognize, nor be compelled to recognize, any transfer made other than in accordance with the terms of this Agreement, nor will it issue any certificate representing the Company Shares to any person who has received such stock in a transfer made other than in accordance with the terms of this Agreement.

## 2.3 Remedies

If any Shareholder transfers or encumbers any of his or her Shares in violation of this Agreement, the other parties hereto, in addition to other rights provided in this Agreement, shall have the right to petition any Court of competent jurisdiction to declare such transfer or encumbrance invalid, and such Shareholders agree that such Court shall order such transfer or encumbrance to be set aside, extinguish the interest of the transferee or creditor in the Shares involved, and award the other parties hereto damages against the Shareholder and the transferee or creditor, if appropriate, suffered by reason of the transfer or encumbrance of the Shares in violation of this Agreement.

## 3. BUY-SELL AGREEMENT

### 3.1 Death of a Shareholder

Upon the death of the Class A Shareholder or the Class B Shareholder, the surviving Shareholder shall be obligated to purchase, and the Personal Representative of the deceased Shareholder shall be obligated to sell, all the Company Shares owned by such deceased Shareholder upon the terms and subject to the conditions set forth in Section 3 of this Agreement.

### 3.2 Definition

"Death" means cessation of life of the Class A Shareholder or the Class B Shareholder as evidenced by a death certificate or other evidence satisfactory to the Company and the surviving Shareholder, including determination by any life insurance company insuring the Class A or Class B Shareholder's life that a death benefit is payable to the surviving Shareholder as a result of the Class A or Class B Shareholder's death.

### 3.3 Purchase Price

The surviving Shareholder ("Buyer") shall purchase, and the Personal Representative of the deceased Shareholder ("Seller") shall sell, the Company Shares pursuant to this Section 3 (except as otherwise noted herein) at a price equal to the per share price times the number of Company Shares so sold ("Purchase Price"). The per share price shall be determined by appraisal (the "Appraised Stock Value"). The Buyer shall appoint an appraiser ("First Appraiser") and the Seller shall appoint a second appraiser ("Second Appraiser") within ten (10) days of being notified of the appointment of the First Appraiser. If the Second Appraiser is not designated timely, the determination of the Appraised Stock Value shall be made by the First Appraiser. The First Appraiser, or each of the First Appraiser and the Second Appraiser if timely designated, shall submit its determination of Appraised Stock Value to J&D Implement, Inc., the Seller and Buyer

within thirty (30) days of its selection (or the selection of the Second Appraiser, if applicable). If there are two (2) appraisers and their respective determinations of Appraised Stock Value vary by less than ten percent (10%) of the higher determination, the Appraised Stock Value shall be the average of the two determinations. If such determinations vary by ten percent (10%) or more of the higher determination, the two appraisers shall promptly designate a third appraiser (the "Third Appraiser"). No one shall provide any information to the Third Appraiser as to the determinations of the First Appraiser and the Second Appraiser or to otherwise influence such Third Appraiser. The Third Appraiser shall submit its determination of Appraised Stock Value to J&D Implement, Inc., the Seller and the Buyer within thirty (30) days of its selection. The Appraised Stock Value shall be equal to the average of the two closest of the three determinations. If any appraiser is only able to provide a range in which the Appraised Stock Value would exist, the average of the highest and lowest value in such range shall be deemed to be such appraiser's determination of Appraised Stock Value. Each appraiser selected pursuant to this Agreement shall be an investment banking firm or other qualified person or entity with prior experience in appraising businesses comparable to J&D Implement, Inc.

## 3.4  Method of Payment of Purchase Price

In the event of a purchase, such purchase shall occur within one hundred twenty (120) days of the triggering of the obligation to purchase. At the time of closing, the Personal Representative of the deceased Shareholder shall transfer such Company Shares to the surviving Shareholder as provided below. The surviving Shareholder shall pay to the Personal Representative of the deceased Shareholder the greater of ten percent (10%) of the Purchase Price or one hundred percent (100%) of the proceeds received from all life insurance policies owned by the surviving Shareholder on the life of the deceased Shareholder (up to the amount of the Purchase Price), in cash, and the balance of the Purchase Price shall be evidenced by the surviving Shareholder's promissory note (the "Note") to the Personal Representative. The Note shall be payable over five (5) years at the then applicable Applicable Federal Rate ("AFR"). The first payment on such Note shall be made one (1) month after the date of closing and payments shall continue on the same day of each succeeding month during the term of the Note. If the surviving Shareholder defaults for sixty (60) days or more in making the payments on the Note, the due dates for the entire amounts remaining unpaid shall be accelerated and the rate of interest shall be increased to the Ohio Statutory legal rate for judgments then in effect. Such Note shall permit prepayment without penalty of all or any part of such principal.

## 4.  MISCELLANEOUS PROVISIONS

## 4.1  Legend to be Inscribed on Stock Certificates

In order to assure that no Company Shares will be transferred, except consistent with this Agreement, each and every certificate for Company Shares shall contain the following legend:

NOTICE IS HEREBY GIVEN THAT THE SALE, ASSIGNMENT, TRANSFER, PLEDGE, HYPOTHECATION OR OTHER DISPOSITION OF THE SHARES OF CAPITAL STOCK REPRESENTED BY THIS CERTIFICATE IS SUBJECT

5

TO AND RESTRICTED BY THE PROVISIONS OF A CERTAIN S
CORPORATION SHAREHOLDER AND BUY-SELL AGREEMENT AMONG
THE COMPANY AND THE SHAREHOLDERS, DATED AS OF
_____, 2003, A COPY OF WHICH AGREEMENT MAY BE
INSPECTED AT THE PRINCIPAL OFFICE OF THE COMPANY, AND ALL OF
THE PROVISIONS OF WHICH AGREEMENT ARE INCORPORATED BY
REFERENCE IN THIS CERTIFICATE, SPECIFICALLY INCLUDING BUT
NOT LIMITED TO THOSE PROVISIONS OF THE AGREEMENT RELATING
TO THE COMPANY'S TAX STATUS AS AN S CORPORATION.

### 4.2  Additional Shares to be Subject to Restrictions

The parties to this Agreement agree that any additional Company Shares to be issued to the
parties hereafter, and which are acquired by any of them shall be subject to the terms of this
Agreement, and shall have the endorsement on the certificate described in Section 4.1 above.

### 4.3  Insurance Policies

The Class A Shareholder and the Class B Shareholder each anticipate acquiring an
insurance policy on the life of the other to assist in funding the obligations under this Agreement.
Each Shareholder shall be entitled to exercise all rights of ownership as to such an insurance policy
and shall be the absolute owner of such a policy.  If either Shareholder decides to purchase an
insurance policy on the life of the other, then the other shall do such things as are necessary to assist
the Shareholder in purchasing such insurance.

### 4.4  Notices

All notices required or desired to be given by the parties hereto shall be deemed given and
delivered to the Company if sent by Certified United States Mail, postage prepaid, addressed to the
Company at the then principal offices of the Company, or at such other address of the Company as
determined by the Company, upon notice to the other parties to this Agreement.  All notices
required or desired to be given to the Shareholders shall be deemed to have been given and
delivered if sent by Certified United States Mail, postage prepaid, addressed to such Shareholder at
the most recent address shown on the books of the Company for such Shareholder.  All notices
required or desired to be given by any party to the Personal Representative of a Deceased
Shareholder shall be deemed to have been given to such Personal Representative if sent by Certified
United States Mail, postage prepaid, and addressed to the address of such Personal Representative
as reflected upon the records of the probate court in the county in which such Personal
Representative is so appointed.

### 4.5  Action of Shareholders or the Personal Representative of a Deceased Shareholder

The Shareholders agree that if any amendments to the articles of incorporation of the
Company, or amendments to the code of regulations of the Company, or any other action requiring
the vote or approval of the Shareholders of the Company, is required to make permissible or lawful
the sale and purchase contemplated hereunder, then the Company Shares which then shall be

6

owned by the Shareholders or the Personal Representative of a deceased Shareholder, as the case may be, will be voted at or prior to the time of such sale, in favor of such amendment or action. Provided, however, in any event, a Shareholder or the Personal Representative of a deceased Shareholder, as the case may be, shall not be required to act so as to incur any personal liability for payment or other satisfaction for all or any part of the Purchase Price as to the sale of any Company Shares sold by such selling Shareholder or Personal Representative hereunder, except as may be otherwise specifically required by this Agreement. As to any sale of Company Shares hereunder, the selling Shareholder or the Personal Representative of a deceased Shareholder, as the case may be, shall transfer upon closing to the Company Shares so sold by delivery of the appropriate stock certificates duly endorsed in blank for transfer, free and clear of all liens and encumbrances, and such selling Shareholder or Personal Representative shall deliver his or her written representation that he owns the Company Shares registered in his or her name, that such shares are free and clear of encumbrances, and that he has the right, power and authority to make such sale and transfer without restriction or qualification.

### 4.6 Termination

This Agreement shall terminate upon the earliest of the following events:

(a)     The written consent of the Company and all Shareholders to terminate the Agreement.

(b)     Upon the event that all of the outstanding Company Shares are owned by any one Shareholder.

(c)     Upon merger (wherein the Company is not the surviving corporation), dissolution, liquidation or bankruptcy of the Company.

### 4.7 Entire Agreement; Modification

This Agreement and the Close Corporation Agreement contain the entire agreement between the parties relating to the restriction on the transfer of the Company Shares. This Agreement and the Close Corporation Agreement supersede all prior agreements or arrangements among the parties regarding those matters. This Agreement may be modified only in writing by the Company and all of the Shareholders.

### 4.8 Specific Performance

Company Shares cannot be readily purchased or sold in the open market, and for that reason, among others, the parties will be irreparably damaged in the event this Agreement is not specifically enforced. Should any dispute arise concerning the sale or disposition of the Company Shares, an injunction may be issued restraining any sale or disposition pending the determination of such controversy. In the event of any controversy concerning the right or obligation to purchase or sell any of the Company stock, such right or obligation shall be enforceable in a court of equity by a decree of specific performance. Such remedy shall, however, be cumulative and not exclusive, and shall be in addition to any other remedy which the parties may have.

03/20/2006  10:48   19896724257          STEPHENS MOORE                    PAGE   40/46

### 4.9   Binding on Heirs and Assigns

This Agreement shall be binding not only on the parties hereto, but also their heirs, personal representatives, successors and assigns, and the parties hereto agree for themselves, their heirs, personal representatives, successors and assigns, to execute any instruments in writing which may be necessary or proper in the carrying out of the purposes and intent of this Agreement.

### 4.10   Captions Not a Part Hereof

The captions of the several sections and paragraphs of this Agreement are not a part of the content hereof, but are only guides or labels to assist in locating and reading the several provisions hereof.

### 4.11   Governing Law

The Company is an Ohio corporation and this Agreement has been drawn and executed in the State of Ohio. All questions concerning the meaning, intention and validity of this Agreement and all questions relating to the performance hereunder respecting any party hereto, shall be judged and resolved in accordance with the laws of the State of Ohio.

{Intentionally Blank}

8

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer, and the Shareholders have hereto set their hands on the day and year first above written.

J&D IMPLEMENT, INC.                         SHAREHOLDERS

By: _____                 _____
Jeffrey D. Mitchell, President               Jeffrey D. Mitchell

                                             _____
                                             Barry Carson

# EXHIBIT F

## SUBSCRIPTION AGREEMENT

The undersigned (the "Subscriber") hereby subscribes to and agrees to purchase from J&D Implement, Inc., an Ohio close corporation (the "Corporation"), and the Corporation hereby sells and agrees to issue to Barry Carson (the "Subscriber"), 25 shares of Class B Non-Voting Common Stock of the Corporation, without par value, at a purchase price of sixteen thousand dollars ($16,000.00) per share (the "Purchase Price"), payable in cash.

The Subscriber hereby acknowledges, represents and warrants to the Corporation that:

1.      The Subscriber is purchasing the Class B Non-Voting Common Stock for the Subscriber's own account for investment purposes and not with the present intention of or a view to the sale, transfer, distribution or other disposition thereof.

2.      The Subscriber has such knowledge and experience in financial and business matters that the Subscriber is capable of evaluating the merits and risks of the Subscriber's investment in the Class B Non-Voting Common Stock and can bear the risk of the Subscriber's investment in the Class B Non-Voting Common Stock for an indefinite period of time and can afford to lose the Subscriber's total investment in the Class B Non-Voting Common Stock. The Subscriber has received or had access to all information about the Corporation the Subscriber has requested or deemed necessary to make an investment in the Class B Non-Voting Common Stock. The Subscriber is aware that no market exists or may ever exist for the resale of the Class B Non-Voting Common Stock. The Subscriber is not relying on or basing an investment decision on any express or implied representation, warranty, promise, guaranty, projection or forecast of the Corporation, its incorporator or any other person on behalf of the Corporation.

3.      The Subscriber is aware that the sale and issuance of the Class B Non-Voting Common Stock has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of the State of Ohio, of the State of Michigan, or of any other state, and that the Class B Non-Voting Common Stock cannot be offered, sold, assigned, transferred, pledged or otherwise disposed of by the Subscriber unless such offer, sale, assignment, transfer, pledge or other disposition is registered under the Securities Act and applicable state securities laws or is made pursuant to an exemption from the registration requirements of the Securities Act and applicable securities laws, the availability of which must be established to the satisfaction of the Corporation.

4.      The Subscriber is an individual whose principal residence is in the State of Michigan at the address set forth below.

5.      The Subscriber hereby agrees to enter into a "Close Corporation Agreement" in the form attached hereto as Appendix A, concurrently with executing this Subscription Agreement.

6.      The Corporation may prevent the transfer and registration of transfer of the Class B Non-Voting Common Stock unless the Corporation shall have received an opinion from counsel or other evidence satisfactory to it to the effect that any such transfer would not

8488172 v1

violate the Securities Act or the securities laws of any state or this Subscription Agreement. The Corporation may cause each certificate representing the Class B Non-Voting Common Stock to bear a legend reflecting all applicable restrictions on transfer.

**IN WITNESS WHEREOF**, this Subscription Agreement has been executed by the Subscriber to be effective on _December 16_, 2003, the effective date of its acceptance by the Corporation as evidenced by its execution of this Subscription Agreement.

Accepted by J&D Implement, Inc.
on _December 16_, 2003.

By: _____
    Jeffrey D. Mitchell, President

Subscriber:

_____
Barry Carson

_2141 N. Gard Rd._
(Address)

_Caro, MI 48723_
(City, State, Zip Code)

_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_
(Social Security Number)

2

A448192 v1

# EXHIBIT G

## ACTIONS TAKEN IN WRITING
### WITHOUT A MEETING
### BY THE SOLE DIRECTOR
### OF
### J&D IMPLEMENT, INC.

The undersigned, being the sole Director of J&D Implement, Inc., an Ohio corporation (the "Corporation"), does hereby take the following actions by this writing, in lieu of a meeting of the Director, pursuant to the provisions of §1701.54 of the Ohio Revised Code.

### Issuance of Shares to Jeffrey D. Mitchell

RESOLVED, that the Corporation is hereby authorized to offer and issue to Jeffrey D. Mitchell thirty-one (31) shares of common stock without par value of the Corporation at Thirteen Thousand Two Hundred Fifteen and 19/100 Dollars ($13,215.19) per share, in the aggregate amount of Four Hundred Nine Thousand Six Hundred Seventy and 89/100 Dollars ($409,670.89) which aggregate amount does not exceed the monetary limits established by §1244 of the Internal Revenue Code, as amended.

RESOLVED FURTHER, that the sale and issuance of said additional shares shall be conducted in compliance with §1244 of the Internal Revenue Code so that the Corporation and its shareholders may obtain the benefits of § 1244.

RESOLVED FURTHER, that the officers of the Corporation are directed to maintain such records as are necessary pursuant to §1244 so that any shareholder who experiences a loss on the transfer of shares of common stock of the Corporation may qualify for "ordinary loss" deduction treatment on their personal income tax returns.

### Enabling Authority

RESOLVED, that the officers of the Corporation are hereby authorized and directed to execute any and all documents necessary or convenient to carry out the purpose and intent of the foregoing resolutions on behalf of the Corporation.

### Ratification of Past Actions

RESOLVED, that any actions taken by the officers of the Corporation prior to the date of these resolutions that are within the authority conferred hereby are ratified, confirmed, approved and authorized in all respects as the acts and deeds of the Corporation.

IN WITNESS WHEREOF, the undersigned, being the sole Director of the Corporation, has executed these Actions effective as of the 31st day of December, 2004.


Jeffrey D. Mitchell

102884.1/02082899 v1

**EXHIBIT "C"**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF TUSCOLA

BARRY CARSON,

     Plaintiff,

vs.

                                            File No.: 06-23478-CK
                                            Hon. Patrick R. Joslyn

J&D IMPLEMENT, INC., an Ohio corporation,
and JEFFREY MITCHELL, Individually,

     Defendants.

_____

STEPHENS & MOORE, PLLC
Attorneys for Plaintiff
By: PHOEBE J. MOORE (P56064)
    CHRISTINE H. STEPHENS (P51659)
121 West Grant Street, Ste. #2
Caro, MI 48723
(989) 672-4255

J. MICHAEL FORDNEY (P13572)
Attorney for Defendants
P.O. Box 6340
Saginaw, Michigan 48608-6340
(989) 791-7060

ROBERT D. GOLDSTEIN (P38298)
Attorney for Defendants
8332 Office Park Drive
Grand Blanc, MI 48439
810-695-3700

_____

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on April 21, 2006, Defendants, J&D

IMPLEMENT, INC., an Ohio corporation and JEFFREY MITCHELL, Individually, filed

a Notice of Removal, a copy of which is attached hereto, in the offices of the Clerk

of the United States District Court for the Eastern District of Michigan.